UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHERI POMPEY-PRIMUS,

                    Plaintiff,

            -v.-

SUCCESS ACADEMY CHARTER
SCHOOLS, INC., and NOREEN
COOKE-COLEMAN,

                    Defendants.

---

21 Civ. 3981 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Sheri Pompey-Primus brings claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 to 301; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131, alleging that Success Academy Charter Schools, Inc. ("Success Academy"), and Noreen Cooke-Coleman (together with Success Academy, "Defendants") discriminated against her on the basis of her sex and caregiver status. Defendants now move to dismiss Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendants' motion with respect to Plaintiff's claims under Title VII, declines to exercise supplemental jurisdiction over Plaintiff's claims under the NYSHRL and NYCHRL, and dismisses the case without leave to amend.

**BACKGROUND**[1]

**A.    Factual Background**

Success Academy is a public charter school operator that operates 47 schools throughout Manhattan, Brooklyn, Queens, and the Bronx.  (Compl. ¶ 16).  In total, Success Academy serves 20,000 students enrolled in kindergarten through twelfth grade and has 2,300 employees.  (*Id.*).

Plaintiff began working as a lead teacher at Success Academy on July 27, 2016.  (Compl. ¶¶ 14, 21).  In Plaintiff's words, her responsibilities as a lead teacher included (i) implementing highly effective instructional practices to improve student learning and academic performance; (ii) adapting teaching methods and materials to meet scholars' varying needs and interests; (iii) creating an enjoyable and interesting learning environment for scholars; and (iv) working closely with parents to support scholars' learning and healthy development in school and at home.  (*Id.* at ¶ 25).

Toward the end of the 2019-2020 school year, in or around March 2020, Success Academy transitioned to remote learning in response to the COVID-19 pandemic and the attendant closing of schools.  (Compl. ¶ 26).  During that transition, Plaintiff told her direct manager that while Plaintiff was working from home, she would also be caring for her two children, ages eleven and

---

[1]    This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #12); Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss as "Pl. Opp." (Dkt. #15); and Defendants' reply memorandum as "Def. Reply" (Dkt. #16).

three.  (*Id.* at ¶ 27).  Plaintiff's manager told Plaintiff that if she needed to step away from the virtual classroom to tend to one of her children, she could use her co-teacher as a back-up.  (*Id.* at ¶ 28).  Following this conversation, Plaintiff would occasionally "tag out" during class to care for her children, during which time Plaintiff's co-teacher would lead the class.  (*Id.* at ¶ 29).  As Plaintiff continued this practice throughout the remainder of the 2019-2020 school year and into the early portion of the 2020-2021 school year, there was no indication that Plaintiff's performance diminished or that Success Academy took issue with her actions.  (*Id.* at ¶¶ 30-32).

Shortly after the start of the 2020-2021 school year, on August 25, 2020, Plaintiff's new direct manager, Defendant Cooke-Coleman, scheduled a call with Plaintiff.  (Compl. ¶ 34).  During the call, Cooke-Coleman directed Plaintiff to obtain childcare for her children to ensure that she was "100% involved with work."  (*Id.*).  Cooke-Coleman further stated that she and Plaintiff would reconvene at the end of that two-week period to discuss the outcome of Plaintiff's search.  (*Id.* at ¶ 35).  Plaintiff claims to have been "shocked and blindsided" by her conversation with Cooke-Coleman, as she had not received any notice that either Cooke-Coleman or Success Academy was displeased with her performance.  (*Id.* at ¶ 36).  Indeed, Plaintiff had never received a negative performance evaluation or any other criticism related to her job performance at Success Academy.  (*Id.* at ¶¶ 38-39).

Plaintiff intuited from her conversation with Cooke-Coleman that she would be fired if she failed to obtain childcare within two weeks of the

3

conversation.  (Compl. ¶¶ 37, 41).  Unable to find childcare, Plaintiff left her job at Success Academy three weeks later, on September 15, 2020.  (*Id.* at ¶ 42).[2]

## B.    Procedural Background

Prior to the commencement of this action, on January 26, 2021, Plaintiff filed a verified charge with the Equal Employment Opportunity Commission ("EEOC"), charging Defendants with "unlawful discrimination in relation to Plaintiff's employment[.]"  (Compl. ¶ 8).  Plaintiff received a Right to Sue letter from the EEOC on or about February 4, 2021.  (*Id.* at ¶ 9).

On May 4, 2021, Plaintiff filed the Complaint in this case.  (Dkt. #1).  That same day, Plaintiff served a copy of the Complaint on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York.  (Compl. ¶ 11).  Defendants then filed a pre-motion letter on May 24, 2021, seeking leave to file a motion to dismiss the Complaint under Rule 12(b)(6).  (Dkt. #8).  Plaintiff submitted a responsive letter opposing Defendants' contemplated motion on May 27, 2021.  (Dkt. #9).  The next day, the Court dispensed with the pre-motion conference; authorized Plaintiff to file an amended complaint, if desired, on or before June 18, 2021; and set a briefing schedule for Defendants' motion.  (Dkt. #10).

Defendants filed their motion to dismiss and opening brief on July 19, 2021.  (Dkt. #11-12).  Plaintiff filed her brief in opposition on August 18, 2021.

---

[2]     Although the Complaint does not address the circumstances under which Plaintiff's employment ultimately came to an end on September 15, 2020 (*see* Compl. ¶ 42 (alleging that "Plaintiff's employment came to an end on or around September 15, 2020")), Plaintiff's opposition brief states that she resigned on that date (Pl. Opp. 10).

(Dkt. #15).  Defendants filed their reply brief on September 1, 2021.  (Dkt. #16).
Accordingly, the motion is fully briefed and ripe for the Court's resolution.

## DISCUSSION

### A.    Applicable Law

To survive a motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to
relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544,
570 (2007).  A claim is facially plausible "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662,
678 (2009).  When evaluating the viability of a plaintiff's claim, the Court must
"draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded
factual allegations to be true, and determine whether they plausibly give rise to
an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.
2011) (internal quotation marks omitted).  That said, the Court is "not required
to credit conclusory allegations or legal conclusions couched as factual
allegations."  *Rothstein* v. *UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

### B.    Analysis

Plaintiff brings discrimination and retaliation claims under Title VII, the
NYSHRL, and the NYCHRL.  Although Defendants move to dismiss Plaintiff's
claims under each statute, the Court focuses its analysis on Plaintiff's federal
claims.  As the Court will explain, it finds that Plaintiff has failed to allege a

plausible discrimination or retaliation claim under Title VII and declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

### 1.    Plaintiff Has Not Alleged a Plausible Claim of Discrimination Under Title VII

Plaintiff's first claim is for sex discrimination under Title VII.  (Compl. ¶¶ 47-53).[3]  Discrimination claims under Title VII are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015).  Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *See Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).  To do so, the plaintiff must show that "[i] [s]he belonged to a protected class; [ii] [s]he was qualified for the position [s]he held; [iii] [s]he suffered an adverse employment action; and [iv] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138).  The burden of establishing a *prima facie* case is "minimal."  *Lenzi* v. *Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).

---

[3]    While Plaintiff broadly alleges that Defendants discriminated against her "due to her gender and status as a childcare-taker" (Compl. ¶ 23), she brings her Title VII claims solely on a theory of sex discrimination (*see id.* at ¶ 50 (alleging that "Defendants discriminated against Plaintiff on the basis of her gender"); *id.* at ¶ 56 (alleging that "Defendants retaliated against Plaintiff by, *inter alia*, terminating her employment in violation of Title VII due to her gender")).  Because Title VII makes it an "unlawful employment practice for an employer … to discriminate against any individual … because of such individual's … *sex*," 42 U.S.C. § 2000e-2(a)(1) (emphasis added), the Court uses the term "sex" rather than "gender" when discussing Plaintiff's claims, except when it is directly quoting from the Complaint or Plaintiff's opposition brief.

At the motion to dismiss stage, however, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*[.]" *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). For employment discrimination claims under Title VII, "a plaintiff must plausibly allege that [i] the employer took adverse action against [her] and [ii] [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86; *see Zoulas* v. *N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019). A plaintiff may satisfy this standard by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. In short, the complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

In this case, Plaintiff alleges that Defendants engaged in sex discrimination by conditioning her job on her ability to secure childcare. (Compl. ¶¶ 37, 41, 50). On Plaintiff's account, Defendants' imposition of that childcare condition amounted to a constructive termination, "since it was clear to Plaintiff that she would need to obtain childcare to keep her job." (*Id.* at ¶ 41). Defendants move to dismiss Plaintiff's claim on the grounds that she has failed to allege (i) that she was constructively terminated or (ii) that any

alleged adverse action was the product of Defendants' discriminatory motive. (Def. Br. 3-6).  The Court agrees with Defendants on both points.

### i.    Adverse Employment Action

"An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry* v. *Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted).  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85.  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*

Of particular relevance here, "[a]n adverse employment action may also take the form of a constructive discharge." *Caskey* v. *Cnty. of Ontario*, 560 F. App'x 57, 59 (2d Cir. 2014) (summary order).  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Terry*, 336 F.3d at 151-52.  "Such a claim requires the employee to show both [i] that there is evidence of the employer's intent to create an intolerable environment that forces the employee to resign, and [ii] that the evidence shows that a reasonable person would have found the work conditions so intolerable that he would have felt compelled to resign." *Shultz* v. *Congregation Shearith Israel of City of New York*, 867 F.3d 298, 308 (2d Cir.

2017).  "The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"  *Pa. State Police* v. *Suders*, 542 U.S. 129, 141 (2004).

Plaintiff has failed to plausibly allege that she was constructively discharged.  *First*, Plaintiff has not alleged that Defendants intended to create an intolerable work environment.  *See Shultz*, 867 F.3d at 308.  To review, Plaintiff alleges that Cooke-Coleman informed her on August 25, 2020, that Plaintiff needed to obtain childcare to ensure that she was "100% involved with work." (Compl. ¶ 34).  Cooke-Coleman further stated that Plaintiff had two weeks to obtain childcare, and that Cooke-Coleman and Plaintiff "would reconvene at the end of the two-week period to discuss the outcome of her search." (*Id.* at ¶ 35).  While Plaintiff alleges that she was "shocked and blindsided" by Cooke-Coleman's statements (*id.* at ¶ 36), and that she was ultimately "unable to satisfy" the childcare condition (*id.* at ¶ 42), she does not allege that she communicated her surprise to Cooke-Coleman or informed her that she would be unable to arrange for childcare within the two-week period. The allegations that are in the Complaint do not plausibly suggest that Cooke-Coleman intended to create "a work atmosphere so intolerable that" Plaintiff would be "forced to quit involuntarily."  *Terry*, 336 F.3d at 152.  At most, Plaintiff's allegations demonstrate that Cooke-Coleman was unaware of or indifferent to Plaintiff's difficulties.  Because "something beyond mere negligence or ineffectiveness is required to constitute deliberate action on the part of the employer sufficient to support a claim of constructive discharge,"

Plaintiff's allegations are insufficient.  *Adams* v. *Festival Fun Parks, LLC*, 560 F.
App'x 47, 50 (2d Cir. 2014) (summary order) (internal quotation marks
omitted); *see also Gonzalez* v. *N.Y.C. Health & Hosp. Corp.*, No. 18 Civ. 2645
(JPO), 2019 WL 2435622, at *9 (S.D.N.Y. June 11, 2019) (dismissing
constructive discharge claim under Title VII where plaintiff failed to allege
anything beyond "mere negligence or ineffectiveness").

   *Second*, Plaintiff's allegations do not suggest that a reasonable person
would have found the work conditions so intolerable that he would have felt
compelled to resign.  *See Shultz*, 867 F.3d at 308.  In Plaintiff's view, Cooke-
Coleman's directive to obtain childcare amounted to an "ultimatum" (Compl.
¶ 35), leaving Plaintiff with "no other option but to secure childcare in the two-
week period leading to September 8, 2020" (*id.* at ¶ 37; *see also id.* at ¶ 50
(alleging that Defendants terminated Plaintiff's employment due to her sex)).
But Plaintiff does not allege that Cooke-Coleman's imposition of this ultimatum
changed her work environment.  Plaintiff does not allege, for instance, that she
was prohibited from continuing to "tag out" and allowing her co-teacher to take
over the classroom while she cared for her children; that she struggled to fulfill
her duties as a lead teacher; that Defendants made any additional comments
concerning her childcare situation; or any other facts that could suggest that
her working conditions had taken a turn for the worse.  *See Rasko* v. *N.Y.C.
Admin. for Children's Servs.*, 734 F. App'x 52, 55 (2d Cir. 2018) (summary
order) (concluding that plaintiff failed to plead an adverse employment action

under Title VII where she did not "allege any facts suggesting that her work conditions changed as a result of the" alleged adverse employment action).

Moreover, even if the Court were to assume that Cooke-Coleman's alleged ultimatum could, on its own, create an intolerable work environment, Plaintiff has not plausibly alleged that Cooke-Coleman imposed such an ultimatum. To be clear, Plaintiff does not allege that Cooke-Coleman stated that Plaintiff would be fired if she failed to obtain childcare within the two-week period. Rather, Plaintiff alleges that Cooke-Coleman told her that the two "would reconvene" two weeks after the call "to discuss the outcome of [Plaintiff's] search." (Compl. ¶ 35). Plaintiff further alleges that, despite her inability to secure childcare, she was not fired two weeks after her conversation with Cooke-Coleman, but instead continued working in her position for *three* weeks after that conversation, after which her "employment came to an end on or around September 15, 2020." (*Id.* at ¶ 42). Plaintiff does not address why, if Cooke-Coleman had imposed a two-week ultimatum, Plaintiff was permitted to work for an additional week past that deadline, or why she chose to resign the week following it. *See Biehner* v. *City of New York*, No. 19 Civ. 9646 (JGK), 2021 WL 4924838, at *4 (S.D.N.Y. Oct. 20, 2021) (finding that "plaintiff's resignation cannot serve as an adverse employment action" under Title VII "because she does not allege that she resigned out of duress or coercion"),

*reconsideration denied*, No. 19 Civ. 9646 (JGK), 2021 WL 5827536 (S.D.N.Y. Dec. 7, 2021).[4]

Furthermore, Cooke-Coleman's statement that she and Plaintiff would have a second conversation two weeks later undercuts Plaintiff's claim that she was constructively discharged.  (*See* Compl. ¶ 35).  Although Plaintiff does not allege whether she and Cooke-Coleman spoke following their initial August 25, 2020 phone call, that second conversation would have plausibly provided Plaintiff with an opportunity to seek redress or, at minimum, to express her shock at Cooke-Coleman's previous statements and explain her inability to obtain childcare.  (*See id.* at ¶¶ 36, 42).  *See Chang* v. *City of New York Dep't for the Aging*, No. 11 Civ. 7062 (PAC) (JLC), 2012 WL 1188427, at *5 (S.D.N.Y. Apr. 10, 2012) (finding that plaintiff's decision not to participate in disciplinary hearing weighs against his constructive discharge claim), *report and recommendation adopted*, No. 11 Civ. 7062 (PAC) (JLC), 2012 WL 2156800

---

[4]    Plaintiff states in her opposition brief that "[c]ourts look to a variety of facts to determine whether threats of termination are sufficient, such as whether the threats of termination were repeated, direct, or involved additional adverse conduct."  (Pl. Opp. 10 (citing *Dall* v. *St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 178 (E.D.N.Y. 2013), and *Fotopolous* v. *Bd. of Fire Comm'rs of Hicksville Fire Dist.*, 11 F. Supp. 3d 348, 366-67 (E.D.N.Y. 2014)).  Plaintiff's cited authority undercuts her claim.  In *Dall*, for example, the plaintiff was told that the defendant was "unequivocally seeking" plaintiff's termination; that he "would be terminated if he did not resign and advised him to resign or risk 'irreparable' damage to his reputation"; and again that "he would be terminated if he did not resign."  *Dall*, 966 F. Supp. 2d at 178-79.  Similarly, in *Fotopolous*, the plaintiff alleged that he was told to sign certain documents "otherwise he would be arrested and prosecuted, would never work again and would lose his benefits."  *Fotopolous*, 11 F. Supp. 3d at 367.  Here, by contrast, Plaintiff has alleged only that Cooke-Coleman told her to take a certain action and that the two would discuss the status of Plaintiff's progress two weeks later.  (Compl. ¶¶ 34-35).  And while the Court recognizes that *Dall* and *Fotopolous* were decided at the summary judgment stage, it notes that whether Cooke-Coleman made similar threats or whether Plaintiff experienced a similarly intolerable work environment is information that should be within her possession even without the aid of discovery.

(S.D.N.Y. June 14, 2012); *see also Silverman* v. *City of New York*, 216 F. Supp. 2d 108, 115 (E.D.N.Y. 2002) (observing that "courts in this circuit generally have refused to find a constructive discharge where an employee had an avenue through which he could seek redress for the allegedly 'intolerable' work atmosphere leading up to his resignation, but failed to take advantage thereof" (collecting cases)), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) (summary order).

Plaintiff's arguments in opposition are unavailing.  Plaintiff attempts to draw support for her constructive termination claim from *Tse* v. *UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274 (S.D.N.Y. 2008).  (Pl. Opp. 10-12).  In particular, Plaintiff relies heavily on *Tse*'s statement that "[w]hen an employer imposes new conditions of employment and combines those conditions with a threat of termination for non-compliance, such a combination may give rise to a constructive demotion, thereby creating an adverse employment action."  *Id.* at 290.  Plaintiff argues that Defendants engaged in similar behavior here by "forc[ing] [her] to choose between complying with Defendants' demands to obtain childcare" or "fac[ing] possible termination[.]"  (Pl. Opp. 12).

This case differs from *Tse* in several critical respects.  In *Tse*, the plaintiff was subjected to several "new requirements on the terms and conditions of" her employment.  *Tse*, 568 F. Supp. 2d at 288.  These new requirements included, among other things, that plaintiff was required to be in the office between 9:00 a.m. and 5:00 p.m. each day and to increase her assets under management by $6,000,000 in six months.  *Id.* at 289.  At least some of the requirements were "explicitly imposed only on her" (and not on other similarly-

13

situated employees) and were "difficult" to meet.  *Id.* at 289-90.  Further, the plaintiff was also explicitly warned that her failure to meet the requirements would potentially lead to her termination.  *Id.* at 290.  Here, by contrast, Plaintiff has not plausibly alleged that she was subjected to any new conditions of employment.  Plaintiff alleges only that she continued in the same position as a lead teacher for three weeks, until she resigned from her position.  (*See* Compl. ¶¶ 41-42).  Nor, as discussed, has Plaintiff plausibly alleged that she was threatened with termination.  In contrast with *Tse*, therefore, Plaintiff has not plausibly alleged that she suffered "a cognizable or material impact on the terms or conditions of [her] employment."  *Tse*, 568 F. Supp. 2d at 290 (quoting *Stembridge* v. *City of New York,* 88 F. Supp. 2d 276, 283 (S.D.N.Y. 2000)).

### ii.      Inference of Discrimination

Plaintiff has also failed to plead that the alleged adverse action she experienced was motivated at least in part by Defendants' discriminatory intent.  Under Title VII, a plaintiff need not prove (or plead) that "the causal link between injury and wrong is so close that the injury would not have occurred but for the act."  *Lenzi*, 944 F.3d at 107 (quoting *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 343 (2013)).  "So-called but-for causation is not the test."  *Id.* (quoting *Nassar*, 570 U.S. at 343).  Instead, a plaintiff need only plead facts that plausibly allege that "the motive to discriminate was *one of the employer's motives*, even if the employer also had other, lawful motives that were causative in the employer's decision."  *Id.* (emphasis in original) (quoting *Nassar*, 570 U.S. at 343).

14

A plaintiff meets this burden by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. Plausible allegations to this effect may arise from a range of circumstances, including "the employer's criticism of the plaintiff's performance in ... degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Here, Plaintiff has not plausibly alleged that Defendants were motivated even in part by a discriminatory animus. Plaintiff does not allege, for instance, that Defendants criticized her performance in degrading terms or otherwise. To the contrary, she alleges that "[a]t no time was Plaintiff given a negative performance evaluation or criticism on her abilities as Lead Teacher." (Compl. ¶ 38). Nor does Plaintiff allege that male teachers were permitted to "tag out" during class to care for their children or that she was otherwise treated differently than similarly-situated male employees in any respect.

Plaintiff's sole allegation suggesting a discriminatory motive is that Defendants "subjected Plaintiff to unlawful discrimination by and through their stereotyped gender remarks that [Plaintiff] was unable to be a good and proper employee because of her status as a mother and child-caretaker." (Compl. ¶ 43). But Plaintiff does not specifically allege any such remarks. The only remark alleged in the Complaint that comes close to Plaintiff's assertion is

15

Cooke-Coleman's statement that Plaintiff needed to obtain childcare for her children to ensure that she was "100% involved with work."  (*Id.* at ¶ 34). While Plaintiff may have found Cooke-Coleman's comment surprising and offensive (*see id.* at ¶¶ 36, 45), absent additional detail linking the statement to Plaintiff's sex, it does not plausibly suggest a discriminatory motive.  *See Small* v. *City of New York*, No. 21 Civ. 1527 (GHW), 2022 WL 376030, at *5 (S.D.N.Y. Feb. 7, 2022) ("No one particular type of proof is required to support an inference of discrimination, but a plaintiff's mere subjective belief that he was discriminated against will not sustain a claim." (internal citation omitted)); *see also Luka* v. *Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (observing that "[i]solated comments, while potentially offensive, do not lead to an inference of discriminatory intent").  In the context of Plaintiff's other allegations, the comment merely suggests that Cooke-Coleman, unlike Plaintiff's previous supervisor, would not afford Plaintiff the flexibility to step away from her class to attend to her children.  (*See* Compl. ¶¶ 27-30).

Because Plaintiff has not plausibly alleged that either Cooke-Coleman or Success Academy took an adverse action against her at least in part because of a discriminatory animus, she has also failed to plead facts giving rise to a plausible inference of discrimination.  *See Patane* v. *Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of discrimination claim under Title VII where plaintiff did "not allege that she was subject to any specific gender-based adverse employment action by [defendants], nor does it set forth any factual circumstances from which a gender-based motivation for such an action might

16

be inferred"); *Humphries* v. *City Univ. of New York*, No. 13 Civ. 2641 (PAE), 2013 WL 6196561, at *8 (S.D.N.Y. Nov. 26, 2013) (dismissing discrimination claim where plaintiff failed to "back up [the] claim with any concrete factual allegations which might support" an inference of discrimination).

In sum, Plaintiff has not plausibly alleged that she experienced an adverse employment action or that Defendants took an adverse action against her based on a discriminatory purpose. Accordingly, the Court grants Defendants' motion to dismiss her discrimination claim under Title VII.[5]

### 2. Plaintiff Has Not Alleged a Plausible Claim of Retaliation Under Title VII

Retaliation claims brought under Title VII, like discrimination claims, are analyzed using the *McDonnell Douglas* burden-shifting framework. To demonstrate a *prima facie* case of retaliation, a plaintiff must establish: "[i] that she participated in an activity protected by Title VII, [ii] that her participation was known to her employer, [iii] that her employer thereafter subjected her to a materially adverse employment action, and [iv] that there was a causal connection between the protected activity and the adverse employment action." *Kaytor* v. *Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

As with discrimination claims, at the motion to dismiss stage, "the allegations in the complaint need only give plausible support to the reduced

---

[5]     As Plaintiff concedes (*see* Pl. Opp. 15), her Title VII claims against Cooke-Coleman must also be dismissed for the independent reason that "Title VII does not impose liability on individuals." *Biehner* v. *City of New York*, No. 19 Civ. 9646 (JGK), 2021 WL 4924838, at *4 (S.D.N.Y. Oct. 20, 2021) (collecting cases), *reconsideration denied*, No. 19 Civ. 9646 (JGK), 2021 WL 5827536 (S.D.N.Y. Dec. 7, 2021).

prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Duplan* v. *City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 316).  For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: [i] defendants discriminated — or took an adverse employment action — against him, [ii] because he has opposed any unlawful employment practice." *Id.* (quoting *Vega*, 801 F.3d at 90); *accord Sealy* v. *State Univ. of New York at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020) (summary order).

"In the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination." *Shultz*, 867 F.3d at 309.  "Nevertheless, the employer's conduct must be 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* (quoting *Hicks*, 593 F.3d at 165).  "Actions that are 'trivial harms' — i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience' — are not materially adverse." *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White,* 548 U.S. 53, 57 (2006)); *accord Harvin* v. *Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128 (2d Cir. 2019) (summary order).

Plaintiff has not plausibly alleged that Defendants took an adverse employment action against her.  Plaintiff again points to Cooke-Coleman's statements during the August 25, 2020 phone call as constituting an adverse action.  (Compl. ¶ 56 (alleging that "Defendants retaliated against Plaintiff by,

*inter alia*, terminating her employment"); *see also* Pl. Opp. 15 (arguing that the same allegations supporting Plaintiff's discrimination claim also support her retaliation claim)).  Even under the more deferential standard that applies to retaliation claims, Cooke-Coleman's statements that Plaintiff needed to obtain childcare so that she would be "100% involved with work" and that the two would reconvene in two weeks "to discuss the outcome of her search" are insufficient to constitute an adverse employment action.  (Compl. ¶¶ 34-35). Plaintiff may have been "shocked" by Cooke-Coleman's remarks (*id.* at ¶ 36), but she has not pleaded that the comments affected her in any way.  Plaintiff does not allege that her position at Success Academy was altered, that she was unable to take care of her children, or that she was reprimanded, demoted, or fired for failing to arrange for childcare.  In short, Plaintiff does not allege that her conversation with Cooke-Coleman would dissuade a reasonable worker from opposing Defendants' alleged discrimination.  *See Ikedilo* v. *Montefiore Med. Ctr.*, No. 19 Civ. 9967 (RA), 2021 WL 3887717, at *7 (S.D.N.Y. Aug. 31, 2021) (dismissing sex discrimination claim where plaintiff did "not allege that she suffered any harm as a result of" the alleged adverse action).

Moreover, Plaintiff has not plausibly alleged that she engaged in protected activity prior to her conversation with Cooke-Coleman.  *See Gates* v. *City of New York*, No. 20 Civ. 3186 (JPC), 2021 WL 3774189, at *10 (S.D.N.Y. Aug. 25, 2021) (noting that a plaintiff must engage in protected activity prior to suffering retaliation to bring a retaliation claim).  Protected activity "includes [i] opposing an employment practice prohibited by Title VII, and [ii] charging

19

discrimination, or otherwise participating in an investigation, proceeding, or hearing arising under Title VII." *Antoine* v. *State Univ. of N.Y. Downstate Med. Ctr.*, No. 21-443-cv, 2021 WL 6101468, at *1 (2d Cir. Dec. 22, 2021) (summary order).  Plaintiff does not allege that she either opposed sex discrimination or participated in an investigation into any such discrimination at Success Academy.  (*See* Compl. ¶ 56 (alleging retaliation, but not alleging protected activity that preceded it)).  *See Wu* v. *Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 582 (2d Cir. 2020) (summary order) (affirming dismissal of retaliation claim where plaintiff did not allege "that she in any way — formally or informally — complained of or opposed" the defendant's allegedly discriminatory practice); *see also Karupaiyan* v. *CVS Health Corp.*, No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *27 (S.D.N.Y. Sept. 23, 2021) (finding plaintiff did not engage in protected activity where he did not "allege that he actually lodged a complaint with his employer about what he perceived to be illegal discrimination on the basis of a protected category").

Plaintiff largely abandons her retaliation claim in her opposition brief. Plaintiff argues that she "need not specifically plead that she complained of the discrimination she suffered," but instead "need only allege that she opposed Defendants' practices in violation of Title VII, which she does by and through the opposition of the discrimination she suffered."  (Pl. Opp. 14-15).  This argument is entirely circular.  It does not identify any allegations made in the Complaint demonstrating that Plaintiff opposed Defendants' alleged discrimination.  In effect, Plaintiff argues that she engaged in protected activity

by engaging in protected activity.  These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," plainly "do not suffice."  *Iqbal*, 556 U.S. at 678.  Accordingly, the Court finds that Plaintiff has not pleaded a plausible claim of retaliation under Title VII.

### 3. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State and City Claims

The Court next addresses whether to exercise supplemental jurisdiction over Plaintiff's remaining discrimination and retaliation claims alleged under the NYSHRL and the NYCHRL.  Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, such jurisdiction is discretionary, *see City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if "the claim raises a novel or complex issue of State law," 28 U.S.C. § 1367(c)(1), or the court "has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3).

In deciding whether to exercise supplemental jurisdiction, a district court must balance the traditional "values of judicial economy, convenience, fairness, and comity[.]"  *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers* v. *Gibbs*, 383 U.S. 715, 726 (1966)); *accord*

21

*Yany's Garden LLC* v. *City of New York*, No. 20-3419, 2022 WL 288071, at *3 (2d Cir. Feb. 1, 2022) (summary order) (stating generally that "if all federal claims are dismissed before trial, the state claims should be dismissed as well" (quoting *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 56 (2d Cir. 2004))).

The Court finds that exercising supplemental jurisdiction over Plaintiff's remaining claims would be inappropriate in this case. Plaintiff's federal claims have been dismissed at the threshold of this case, and her city and state claims implicate different substantive standards. *See, e.g.*, *Loeffler* v. *Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (explaining that "claims under the City HRL must be reviewed independently from" and "more liberally" than their federal counterparts); *McHenry* v. *Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (observing that "[i]n August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, [more] liberally" (internal quotation marks omitted)). Moreover, certain of Plaintiff's claims implicate unsettled areas of state law. *See Tulino* v. *City of New York*, 813 F. App'x 725, 727 n.2 (2d Cir. 2020) (summary order) (noting disagreement among New York's appellate courts concerning the proper standard for constructive discharge claims under the NYCHRL). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. *See Daniel* v. *City of New York*, No. 20 Civ. 11028 (PAE), 2021 WL 5988305, at *11 (S.D.N.Y. Dec. 16, 2021) (declining for similar reasons to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissing Title VII claim at the Rule 12(b)(6) stage).

### 4.    The Court Denies Leave to Amend

Lastly, the Court considers whether to grant Plaintiff leave to amend. Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

While leave to amend is freely granted under Rule 15, it is "within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).  Leave may be denied where a plaintiff does not request to amend her pleading.  *Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (observing that "no court can be said to have erred in failing to grant a request that was not made"); *see also Morey* v. *Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 34 (2d Cir. 2019) (summary order) (holding that "the district court did not abuse its discretion in declining to *sua sponte* allow [plaintiff] leave to file an amended complaint").  Further, leave may be denied where the proposed amendment would be futile. *See Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Amendment is futile if the "amended portion of the complaint would fail to state a cause of action."  *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding amendment not futile where amended complaint would be "sufficient to withstand a motion to dismiss").

Here, Plaintiff has not amended her pleading, accepted the Court's invitation to amend, or requested leave to do so.  *First*, Plaintiff did not amend

23

as a matter of course under Rule 15(a)(1).  *Second*, as discussed, Plaintiff did not amend after the Court granted her leave to amend following Defendants' filing of a pre-motion letter raising the very arguments that the Court has found to be dispositive here.  (Dkt. #10).  *Third*, Plaintiff has not requested leave to amend in her briefing on the instant motion.

Relatedly, Plaintiff has not identified any amendments that would alter the Court's analysis, and her pleading suggests that she is unlikely to be able to do so.  With particular respect to her allegation that she suffered an adverse employment action, Plaintiff has repeatedly emphasized that both her discrimination and retaliation claims rise or fall with Cooke-Coleman's alleged statements made on August 25, 2020.  (*See, e.g.*, Compl. ¶ 41 (alleging that "[t]he implications of Plaintiff's conversation with [Cooke-Coleman] on August 25, 2020, were in effect a constructive termination"); *id.* at ¶ 50 (alleging that Defendants discriminated against Plaintiff by "threatening the status of Plaintiff's employment" and "terminating Plaintiff's employment"); *id.* at ¶ 56 (alleging that Defendants retaliated against Plaintiff by "terminating her employment"); Pl. Opp. 1 (arguing that Plaintiff has alleged an adverse employment action based on her allegation that "Defendants added a condition onto her employment, and threatened termination if that condition was not met"); Dkt. #9 at 2 (arguing in response to Defendants' pre-motion letter that Plaintiff pleaded an adverse employment action based on her conversation with Cooke-Coleman)).  Given the Court's finding that these allegations are insufficient to allege an adverse employment action, there is no reason to

24

believe that Plaintiff will be able to supplement her pleading with additional facts that would nudge her claims across the plausibility threshold. Accordingly, the Court denies Plaintiff leave to amend.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's discrimination and retaliation claims under Title VII with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims and dismisses them without prejudice. Finally, the Court denies Plaintiff leave to amend.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      February 17, 2022
                New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge